O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TERRY LAMELL EZELL, | No. CV 14-04791-FMO (DFM) |
| Plaintiff, | |
| v. | Final Report and Recommendation of United States Magistrate Judge |
| JOSEPH DAVIS et al., | |
| Defendants. | |

This Final Report and Recommendation is submitted to the Honorable Fernando M. Olguin, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[1]

///

///

---

[1] This Final Report and Recommendation has been issued to address arguments made in Defendants' objections (Dkt. 78; hereinafter "Objections") to the original Report and Recommendation filed on August 21, 2015 (Dkt. 77). As discussion of these issues does not affect the Court's conclusions, Defendants were not given an opportunity to file additional objections.

# I.
# BACKGROUND

On March 12, 2015, Plaintiff Terry Ezell, a federal inmate incarcerated at the Federal Correctional Institute in Sheridan, Oregon ("FCI Sheridan"), filed a Third Amended Complaint pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).[2] Dkt. 7 ("TAC"). The TAC names two Defendants, Jose Esquetini and Martin Hernandez, both in their individual and official capacity. Id. at 2.[3] The TAC alleges that Esquetini and Hernandez are physician assistants at the Federal Correctional Complex in Victorville, California. Id. Plaintiff contends that Defendants violated the Eighth Amendment's proscription against cruel and unusual punishment by acting with deliberate indifference to his serious medical needs while he was incarcerated at Victorville from 2008 to 2013. Id. at 12.

On March 26, 2015, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. 70 ("Motion"). On April 16, 2015, Plaintiff opposed Defendants' Motion. Dkt. 73. On May 6, 2015, Defendants filed a reply. Dkt. 74. On May 18, 2015, Plaintiff filed a surreply. Dkt 75. For the reasons discussed in detail below, the Court recommends that Defendants' Motion be denied.

# II.
# STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be

---

[2] This action was originally filed in the District of Oregon but was dismissed for lack of venue and transferred to the Central District of California. See Dkt. 41.

[3] All page citations to the TAC are to the CM/ECF pagination.

2

dismissed under Rule 12(b)(6) for failure to state a claim based on the lack of a cognizable legal theory or the absence of facts alleged under such a theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need not plead detailed factual allegations, but the complaint must contain enough facts to establish a plausible entitlement to relief that is more than merely speculative. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A pleading will be rejected if it offers labels, conclusions, or a formulaic recitation of the elements of a cause of action. Iqbal, 556 U.S. at 678.

  The Court construes the complaint of a pro se party liberally. Barrett v. Belleque, 544 F.3d 1060, 1061-62 (9th Cir. 2008). Additionally, the Court accepts Plaintiff's factual allegations as true and views all inferences in a light most favorable to Plaintiff. Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir. 2001)

  If the Court finds that the complaint or a portion thereof should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment" (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987))). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting

further amendment" where "basic flaw" in pleading cannot be cured by amendment).

## III.
## SUMMARY OF PLAINTIFF'S ALLEGATIONS

On October 22, 2008, Plaintiff arrived at the United States Penitentiary ("USP") Victorville and completed an intake screening evaluation, noting that he had narcolepsy. TAC ¶ 10. On October 30, 2008, Plaintiff told Esquetini that he had been diagnosed with narcolepsy and a sleep-terror disorder. Id. ¶ 11. Esquetini told Plaintiff that the prison was not a hospital and that no one at the prison specialized in sleep disorders. Id.

On April 27, 2009, Plaintiff told Esquetini that he had had a terrifying narcoleptic episode. Id. ¶ 12. Esquetini told Plaintiff to sign a release form so that he could obtain medical records from the Swedish Sleep Center ("SSC") to verify Plaintiff's narcolepsy. Id. Several weeks later, Esquetini had Plaintiff sign another release form and told him that nothing could be done to treat his condition until his medical records were obtained from SSC. Id. Esquetini failed to perform any test of his own or order any examination necessary to assess and treat Plaintiff's condition. Id. ¶ 15. Esquetini acknowledged that Plaintiff's condition called for certain "safety measures" but "deferred any action or treatment" while Plaintiff's "underlying condition" "worsen[ed]." Id. Plaintiff alleges that Esquetini was deliberately indifferent to his medical needs by failing to obtain Plaintiff's medical records and by failing to treat, examine, diagnose, or direct others to diagnose Plaintiff's medical condition. Id. ¶¶ 13-17, 28, 29.

On January 27, 2010, Plaintiff was transferred from USP Victorville to FCI Victorville, where he was assigned to Hernandez. Id. ¶¶ 18-19. Plaintiff again included information about his narcolepsy on his intake questionnaire. Id. ¶ 20. Shortly after his transfer, Plaintiff informed Hernandez that he was

4

experiencing narcoleptic episodes that interfered with his "daily life" and that he was afraid of injuring himself. Id. ¶ 21. Hernandez told Plaintiff that there was nothing in his file that confirmed his alleged condition. Id. A few weeks later, Plaintiff provided Hernandez with "certified medical documents" from several doctors supporting his claim of narcolepsy, as well as the recommendation from the sentencing District Judge that Plaintiff be placed in a "Federal Medical Center." Id. ¶ 22. Hernandez told Plaintiff that the records "were unacceptable and needed to come from the source," but issued Plaintiff a "no duty" chronicle, which is a pass issued to an inmate indicating that he is not to be assigned to a work detail. Id. ¶ 23. Sometime later, Plaintiff provided Hernandez with the contact information for SSC and also requested that Hernandez contact Esquetini regarding Plaintiff's medical records. Id. ¶ 24. Plaintiff saw Hernandez at sick call at least 10 to 15 times before December 8, 2010, and repeatedly described the sleep-terror and sleepwalking episodes he was experiencing. Id. ¶¶ 24, 27.

On December 8, 2010, Plaintiff had a sleep terror that caused him to fall from his upper bunk and injure his lower back and right knee. Id. ¶ 25. In response to Plaintiff's injuries, Hernandez prescribed Motrin and issued him a "lower floor" chronicle. Id. At some point, Plaintiff gave Hernandez the "names of several medications" that had been suggested by one of Plaintiff's previous medical providers to treat his sleep disorder. Id. ¶ 35. Plaintiff alleges that Hernandez was deliberately indifferent to his medical needs by failing to treat, examine, diagnose, or direct others to diagnose Plaintiff's medical condition for over two years. Id. ¶ 28, 29.

In March 2012, Plaintiff was transferred to FCI Sheridan. Dkt. 23 at 5. On April 29, 2013, Plaintiff injured himself in his cell while sleepwalking, resulting in the loss of a lower tooth and a bruised lip. Id. ¶ 36. Subsequent visits to see FCI Sheridan medical staff resulted in notations in Plaintiff's

1 medical record that he was "diagnosed as having narcolepsy," "has persistent
2 night walking and falls asleep in the daytime," and "has narcolepsy and should
3 be treated." Id.
4     Plaintiff seeks compensatory damages in the amount of $2,000,000,
5 injunctive relief in the form of "adequate medical treatment," and his costs in
6 bringing this action. TAC at 12.

## IV.
## DISCUSSION

Defendants argue that the TAC fails to state a claim that they acted with deliberate indifference to Plaintiff's serious medical needs. Motion at 4-5. Defendants also contend that, in any event, they are entitled to qualified immunity. Id. at 5-7.

**A.** **Legal Standard**

The Eighth Amendment prohibits cruel and unusual punishment of an individual convicted of a crime. See Whitley v. Albers, 475 U.S. 312, 319 (1986). Prison officials are required to provide inmates with adequate medical care and the failure to do so can constitute an Eighth Amendment violation cognizable under Bivens. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976); Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). A claim for inadequate medical care requires proof of both an objective component—i.e., the existence of a "serious medical need" —and a subjective component—a prison official's "deliberate indifference" thereto. Colwell, 763 F.3d at 1066.

An inmate's medical need is "serious" if failure to treat his or her medical condition "could result in further significant injury" or could cause "the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of

6

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Colwell, 763 F.3d at 1066 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1991)).

A prison official is deliberately indifferent under the subjective element of the test only if the official "'knows of and disregards an excessive risk to inmate health and safety.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)). This "'requires more than ordinary lack of due care.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley, 475 U.S. at 319). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); Hunt v. Dental Dep't., 865 F.2d 198, 200 (9th Cir. 1989) ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation"). While the harm caused by delay need not necessarily be "substantial," McGuckin, 974 F.2d at 1060 & n.2, the Eighth Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and . . . Defendants should have known this to be the case," Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

**B.  Analysis**

Liberally construed, the facts alleged in the TAC show that Plaintiff informed Esquetini shortly after Plaintiff arrived at USP Victorville that he had narcolepsy and sleep terrors. TAC ¶ 11. Several months later, Plaintiff told Esquetini that he had "a narcoleptic episode that terrified him." Id. ¶ 12.

7

Thereafter, Plaintiff alleges that despite his repeated requests, Esquetini said that "he could do nothing to treat Plaintiff" and did not provide any treatment but "deferred any action or treatment . . . until medical records were received, all the while acknowledging that [Plaintiff's] medical condition merited certain safety measures to be implemented." Id. ¶¶ 12, 15. Plaintiff contends that Esquetini's delay of more than a year in treatment caused a "worsening of [Plaintiff's] underlying condition." Id. ¶ 15.

After transfer to FCI Victorville, Plaintiff "informed Hernandez that he was experiencing narcoleptic episodes and he was afraid of injuring himself." Id. Hernandez stated that there was "nothing he could do" and that "there was nothing in [Plaintiff's] medical file that confirmed his alleged condition. Id. A few weeks later, Plaintiff provided Hernandez with "certified medical documents" from several doctors supporting his claim of narcolepsy, as well as the recommendation from the sentencing District Judge that Plaintiff be placed in a "Federal Medical Center." Id. ¶ 22. On 10 to 15 subsequent occasions before December 8, 2010, Plaintiff attended sick call with Hernandez where he described the sleep-terror and sleepwalking episodes he was experiencing. Id. ¶ 24, 27.

Plaintiff contends that for more than a year after Plaintiff informed Esquetini of his medical condition, Esquetini repeatedly failed to perform or direct another medical professional to perform any tests to diagnose or treat Plaintiff's medical condition. Id. ¶ 15. Plaintiff further contends that for nearly eleven months he repeatedly complained to Hernandez about his sleep-terror and sleepwalking episodes. Id. Part of Hernandez's rationale for failing to treat Plaintiff was that there was nothing in Plaintiff's medical files confirming his condition. Id. ¶ 21. Presumably, had Esquetini diagnosed or treated Plaintiff, such diagnosis or treatment would have been reflected in Plaintiff's medical records and been available for review by Hernandez. Regardless, Hernandez

provided no medical care for Plaintiff's conditions and did not provide a lower-bunk restriction. See id. at 23 (showing that on October 18, 2010, Plaintiff was "being evaluated for narcolepsy" and was restricted from duty but had not been issued lower bunk).

Mere delay in treatment does not violate the Eighth Amendment unless the delay causes serious harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). On December 8, 2010, however, Plaintiff had a sleep terror that caused him to fall from his upper bunk and injure his lower back and right knee. Id. ¶ 25. Plaintiff's injuries are serious enough to state a claim. See Colwell, 763 F.3d at 1066 (serious medical need includes "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment" (internal quotation marks omitted)). Plaintiff also claims that he was injured while sleepwalking on April 29, 2013. Id. ¶ 36.

Prescription medications and safety restrictions such as assignments to a lower bunk are available to inmates. See, e.g., Brissette v. Stepke, No. 13-1355, 2013 WL 4806516, at *2 (S.D. Cal. Sept. 9, 2013) (noting that inmate was seen by primary-care provider, received repeat sleep study and multiple-sleep-latency test, had diagnosis of narcolepsy confirmed, and was prescribed medication); Enlow v. Beard, No. 11-856, 2013 WL 5332139, at *2 (W.D. Pa. Sept. 23, 2013) (noting that inmate was issued bottom bunk because of complaints of night terrors and falling out of bed); Kerney v. Raba, No. 89-5361, 1990 WL 37645, at *2 (N.D. Ill. Mar. 30, 1990) (noting that inmate was prescribed narcolepsy medication). Here, Plaintiff was not issued a lower floor restriction until after his December 2010 injury. See TAC ¶ 25.

Prison medical staff must either treat inmates' medical conditions or refer them to those who can. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) ("Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems. The medical staff must be

competent to examine prisoners and diagnose illnesses. It must be able to treat medical problems or to refer prisoners to others who can."). Plaintiff alleges that Defendants, notwithstanding multiple complaints of narcoleptic episodes and sleep terrors, not only failed to obtain Plaintiff's SSC records, but also failed to perform any tests of their own, failed to confirm or do anything to treat the complained-of condition, and failed to confirm or treat the complained-of condition. Viewed in the light most favorable to Plaintiff, the Court finds these allegations are sufficient to raise an inference that Defendants knew of and disregarded an excessive risk to Plaintiff's safety. See Spicer v. Benson, No. 94-5203, 1996 WL 11094, at *4 (N.D. Ill. Jan. 8, 1996) (denying motion to dismiss where jail officials failed to diagnose or treat Plaintiff's narcolepsy for over a year because another facility failed to produce inmate's records).

      Accordingly, the Court finds that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against both Esquetini and Hernandez for deliberate indifference to his serious medical needs.

### C. Defendants Are Not Entitled to Qualified Immunity at This Time

      The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). On a motion to dismiss, the Court must accept the allegations of the complaint as true when determining whether a defendant is entitled to immunity. Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004); see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified

immunity is entitled to dismissal [pursuant to Rule 12(b)(6)] before the commencement of discovery.").

The qualified immunity analysis is two-pronged. See Pearson, 555 U.S. at 232, 236. Under what is often called the first prong, the issue is whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. Id. at 232. Here, because the Court concludes that the allegations of the TAC, when taken in the light most favorable to Plaintiff, are sufficient to state a plausible Eighth Amendment claim against Esquetini and Hernandez, the first step is satisfied.

The second prong of the qualified-immunity analysis asks whether the constitutional right in question was "clearly established" at the time of the alleged conduct. Id. Regardless of whether the facts make out a constitutional violation, qualified immunity is available if the right allegedly violated was not clearly established. Id. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, --- U.S. ---, 131 S. Ct. 2074, 2083 (2011) (brackets omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," Saucier v. Katz, 533 U.S. 194, 201 (2001), and "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken,'" Pearson, 555 U.S. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, --- U.S. ---, 132 S.Ct. 1235, 1244-1245 (2012) (internal quotation marks omitted). "[A] case directly

on point" is not required to show the right in question was clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft, 131 S. Ct. at 2083 (citing Anderson, 483 U.S. at 640); Malley v. Briggs, 475 U.S. 335, 341 (1986)); see Acosta v. City of Costa Mesa, 718 F.3d 800, 824 (9th Cir. 2013).

Here, accepting Plaintiff's factual allegations as true, he has shown that Esquetini and Hernandez unreasonably delayed treatment of Plaintiff's conditions. The Ninth Circuit has held that it is clearly established that a prison official may not intentionally deny or delay access to medical care. Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002); see also Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law."), overruled on other grounds by Colwell v. Bannister, 763 F.3d 1060 (9th Cir. 2014). Defendants are alleged to have violated such clearly established law by failing to provide Plaintiff with medical care after being placed on notice of his medical condition. Thus, the TAC states violations of "clearly established" federal law by Esquetini and Hernandez.

Consequently, the Court concludes the TAC establishes the second prong of the qualified-immunity analysis in regard to Defendants. Furthermore, because the Court already concluded that the TAC's allegations establish the first prong of the qualified immunity analysis, the Court finds that Defendants are not entitled to qualified immunity at this stage in the proceedings. See Butler, 370 F.3d at 963-64.

///
///
///

## V.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Judge issue an Order: (1) approving and accepting this Report and Recommendation; and (2) denying Defendants' Motion.

Dated: December 23, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge